Kimberly Brinkman,

                Plaintiff,                        Civ. No. 16-3499 (RHK/HB)

**MEMORANDUM OPINION
AND ORDER**

v.

Nasseff Mechanical Contractors Inc., *et al.*,

                Defendants.

---

Lisa C. Stratton, Jill R. Gaulding, Christy L. Hall, Gender Justice, St. Paul, Minnesota, Jean M. Boler, Schaefer Halleen, LLC, Minneapolis, Minnesota, for Plaintiff.

Britton D. Weimer, Weimer & Weeding PLLC, Bloomington, Minnesota, for Defendant Nasseff Mechanical Contractors Inc.

Brendan D. Cummins, Cummins & Cummins, LLP, Minneapolis, Minnesota, for Defendant Local Union #417.

---

## INTRODUCTION

Plaintiff Kimberly Brinkman has worked as a sprinkler fitter in the construction industry for nearly twenty years. In this action, she alleges that her union, Defendant Local Union #417 (the "Union"), and a construction company for which she performed union work, Defendant Nasseff Mechanical Contractors Inc. ("Nasseff"),[1] discriminated against her on account of her gender and retaliated against her when she complained, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et*

---

[1] The Union initially was sued as "Sprinkler Fitters Local Union #417," but in her Amended Complaint Brinkman has shortened its name to "Local Union #417." In addition, the Amended Complaint avers that Nasseff's name is "Nasseff Mechanical Contractors, Inc." (Am. Compl. ¶ 2), although the caption omits a comma between "Contractors" and "Inc."

*seq.*, and the Minnesota Human Rights Act ("MHRA), Minn. Stat. § 363A.01 *et seq.* Presently before the Court are Defendants' Motions to Dismiss. For the reasons that follow, the Motions will be granted in part, the Title VII claims dismissed with prejudice, and the MHRA claims dismissed without prejudice.

## BACKGROUND

The facts relevant to deciding the instant Motions are as follows. Brinkman has been a member of the Union since 1999 or 2000. (Am. Compl. ¶ 33.) Pursuant to a collective-bargaining agreement, the Union supplies labor to more than twenty fire-protection companies in the metropolitan Minneapolis area for commercial sprinkler work. (Id. ¶ 23.) Brinkman is one of only two female "journeyman" members of the Union. (Id. ¶ 22.)

According to the Amended Complaint, Brinkman began experiencing harassment by male coworkers from nearly the beginning of her work in the sprinkler-fitting industry. (Id. ¶ 34.) She alleges that she has suffered various forms of discriminatory conduct, including not being permitted to work on jobs from start to finish, experiencing significant periods during which she was offered no assignments, and other mistreatment she attributes to her gender. (See generally id. ¶¶ 32-61.) With respect to Nasseff, she alleges that she was initially passed over for work on a Nasseff project in 2013, but after raising the issue, the company agreed to hire her. Yet, she alleges the company did not support her like her male co-workers and, eventually, laid her off while hiring male replacements. (See id. ¶¶ 62-84.) Brinkman sought to challenge the layoff through the Union, but it allegedly refused to bring a grievance on her behalf. (Id. ¶¶ 85-88.)

On January 1, 2014, Brinkman filed two charges of discrimination with the Minnesota Department of Human Rights ("DHR") against Nasseff and the Union, respectively. (Id. ¶¶ 12-13.) The charges were cross-filed with the Equal Employment Opportunity Commission ("EEOC"). (Id. ¶ 14.) In September 2014, the DHR notified Brinkman that her charges were being referred to the EEOC for further processing. Then, on July 18, 2016, Brinkman received right-to-sue letters from the EEOC with respect to the charges. (Id. ¶¶ 15-16.) Consistent with Title VII, see 42 U.S.C. § 2000e-5(f)(1), the letters made clear that any lawsuit based on the allegations in the charges had to be filed within 90 days of receipt. (See Third Cummins Aff. Ex. 1.)[2]

Ninety days from July 18, 2016, was Sunday, October 16, 2016. On that day, one of Brinkman's attorneys, Lisa Stratton, Esq., attempted to commence this action by filing the Complaint and related documents via the Court's Electronic Case Filing (ECF) system. (Second Stratton Decl. ¶ 12.) At the time, the Court had recently transitioned from paper filing to electronic filing for commencing new cases; Stratton, who had not been actively litigating cases for several years and had not previously commenced an action through ECF, attempted to familiarize herself with the Court's new procedures, which are available on the Court's website. (Id. ¶¶ 10-11.)[3] According to Stratton, it

---

[2] As discussed in more detail below, the Court may consider the affidavits, declarations, and other documents in the record because it will convert the instant Motions into motions for summary judgment. Regardless, EEOC records (such as right-to-sue letters) are properly considered on a motion to dismiss, see Faibisch v. Univ. of Minn., 304 F.3d 797, 802-03 (8th Cir. 2002), and the letters are referenced in the Amended Complaint, see Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011).

[3] Federal Rule of Civil Procedure 5(d)(3) allows a court to require electronic filing by local rule; this Court has adopted such a rule, mandating that "[a]ll documents must be filed electronically"

appeared that she had done everything correctly, and she emailed Brinkman and her co-counsel, Christy Hall, Esq., later that evening to advise that she had filed the Complaint. (Id. ¶¶ 12, 15.) Yet, Stratton did not receive an NEF indicating that the Complaint had been filed, nor did Hall, whose ECF account Stratton had used because of concern that her own account would not work properly. (Id. ¶¶ 12, 14, 17.)

On Monday October 17, Stratton contacted Hall and asked her to verify that the Complaint had been properly filed and the action started. (Id. ¶ 16.) Hall checked the "new cases" list on the Court's website but did not see Brinkman's action. (Hall Decl. ¶ 10.) Because there were many cases on the list, Hall believed the Clerk's office simply "hadn't gotten to docketing [the] complaint yet." (Id.) But when Hall did not see the case on the list by early afternoon, she called the Clerk's office and spoke to an unknown male employee. (Id. ¶¶ 12-13.) Though she cannot recall verbatim what was said, the "gist of the conversation" was that Hall asked whether "everything had been correctly filed," and the employee responded that it had been and that the Clerk's office had received the Complaint, but it still needed to be docketed. (Id. ¶¶ 13-14.) Based on this conversation, Hall perceived no reason for concern and concluded "the reason we hadn't

---

pursuant to the Court's Civil Electronic Case Filing Procedures Guide. D. Minn. LR 5.1(a)-(b). The instructions for opening a new case electronically through ECF contemplate a two-step process: (1) the entry of case data (such as party names and the basis for jurisdiction), after which a case number is assigned, and (2) the uploading of case "initiating documents," including the complaint and civil cover sheet. See Elec. Civil Case Opening for Attorneys Instructions, available at http://www.mnd.uscourts.gov/cmecf/guides/ElectronicCaseOpeningInstructionsForAttorneys.pdf. A Notice of Electronic Filing ("NEF") is delivered once the process has been correctly completed. See id.; see also Civil Elec. Case Filing Procedures Guide § II(A)(2)(e), available at http://www.mnd.uscourts.gov/cmecf/guides/Civil-ECF-Procedures-Guide.pdf.

seen anything via ECF or on the New Cases Report was that the [C]lerk's office still needed to docket it." (Id. ¶ 15.)

By Wednesday October 19, neither Stratton nor Hall had received an NEF indicating the Complaint had been filed. They exchanged emails about the "puzzling" delay but did not attempt to contact the Clerk's office. (Id. ¶ 18; Second Stratton Decl. ¶¶ 20-21.) But with still no NEF received by Friday October 21, Stratton called the Court's ECF help desk and was advised that although a case had been "opened" on Sunday October 16, the Complaint had not been electronically uploaded and filed at that time, and the information previously provided by the male employee had been incorrect. (Second Stratton Decl. ¶ 22.) After discussing the matter, Stratton and Hall then decided to immediately re-file the Complaint. (Id. ¶¶ 22-23.) Accordingly, the docket in this matter reflects that the Complaint was not filed until Friday, October 21, 2016.

The Union and Nasseff responded to the Complaint by moving to dismiss. Brinkman then amended her Complaint,[4] and Defendants have moved once again to dismiss, arguing *inter alia* that her Title VII claims are untimely because she filed this action more than 90 days after receiving the EEOC's right-to-sue letters. The Motions have been fully briefed and are ripe for disposition.

---

[4] The initial Motions to Dismiss (Doc. Nos. 5, 14) remain pending in the docket, but they are now moot as a result of the Complaint's amendment. See, e.g., In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 928 (8th Cir. 2005); Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 956 (8th Cir. 2002); In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000).

**STANDARD OF DECISION**

The procedural posture of this case requires a brief digression regarding the appropriate standard of review. As noted above, Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing (among other things) that Brinkman's Title VII claims – the only claims addressed herein – are untimely based on the statute's 90-day limitations period. Yet, the statute of limitations "rarely provides a basis for Rule 12(b)(6) dismissal," Haile v. HMS Host, Civ. No. 14-379, 2014 WL 2480191, at *1 n.3 (D. Minn. June 3, 2014) (Kyle, J.), because it is an affirmative defense that the defendant must plead and prove, see Fed. R. Civ. P. 8(c)(1); Jessie v. Potter, 516 F.3d 709, 713 n.2 (8th Cir. 2008). Accordingly, an action may be dismissed based on a statute of limitations only if "the complaint itself establishes the defense." Jessie, 516 F.3d at 713 n.2.[5]

As discussed in more detail below, this is one such "rare" case. It is beyond dispute here that the deadline for Brinkman to file her Complaint expired on October 17, 2016, but her Complaint was not filed until four days later. Accordingly, the Complaint itself establishes that Brinkman was untimely, at least with respect to the Title VII claims.

Nevertheless, Brinkman attempts to invoke the doctrine of equitable tolling to save these claims, submitting Declarations from her attorneys setting forth their efforts to

---

[5] As the undersigned has previously noted, some courts treat EEOC filing deadlines as *conditions precedent to suit* that must be pleaded and proved by plaintiffs, rather than affirmative defenses. See Hile v. Jimmy Johns Highway 55, Golden Valley, 899 F. Supp. 2d 843, 847 n.6 (D. Minn. 2012) (Kyle, J.) (pointing out that the Eighth Circuit noted the issue in Jessie but declined to address it). Here, the Court simply follows the parties' lead and treats Title VII's 90-day limit for filing suit as a statute of limitations rather than a condition precedent.

commence this action through ECF. These Declarations are beyond the pleadings and ordinarily would not be considered by the Court on a motion to dismiss. But because they have been submitted by Brinkman, and because equitable tolling provides the only basis for saving her Title VII claims, the Court will consider them. Doing so, however, means converting Defendants' Motions into motions for summary judgment. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 701 (8th Cir. 2003) (district court has "complete discretion to determine whether or not to accept any material beyond the pleadings").[6]

Summary judgment is proper if, drawing all reasonable inferences in favor of Brinkman, there is no genuine issue as to any material fact and Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009). Defendants bear the burden of showing the material facts are undisputed. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*); Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must view

---

[6] When a court converts a motion to dismiss into one for summary judgment, the "party against whom this procedure is used . . . is normally entitled to notice that conversion is occurring," Barron *ex rel.* D.B. v. S.D. Bd. of Regents, 655 F.3d 787, 791 (8th Cir. 2011), and "must be given a reasonable opportunity to present all the material that is pertinent to the motion," Fed. R. Civ. P. 12(d). But such notice may be constructive rather than affirmative, and where, as here, it is the non-movant who has submitted extra-pleading material, she is on sufficient notice that the motion may be converted. See Barron, 655 F.3d at 792; Hamm v. Rhone-Poulenc Rorer Pharm., Inc., 187 F.3d 941, 949 (8th Cir. 1999) (no error in failing to give "formal notice" before converting motion where "the nonmoving party has submitted materials outside of the pleadings in support of its resistance to a motion to dismiss"). Notably, Brinkman has not suggested any facts are missing from the record or require further development. See Hamm, 187 F.3d at 949.

the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to Brinkman. Beard v. Banks, 548 U.S 521, 529-30 (2006); Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009). Brinkman may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial. Fed. R. Civ. P. 56(c)(1)(A); Wood v. SatCom Mktg., LLC, 705 F.3d 823, 828 (8th Cir. 2013).

## ANALYSIS

I. **The Title VII claims**

   A. **Brinkman did not file this action within 90 days**

Defendants contend that Brinkman failed to commence this action within 90 days of receiving the right-to-sue letters, and her Title VII claims are therefore untimely and must be dismissed. Title VII provides that "[i]f a charge filed with the [EEOC] is dismissed . . ., the [EEOC] shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge." 42 U.S.C. § 2000e-5(f)(1). This ninety-day limit is not jurisdictional, but is in the nature of a statute of limitations. See, e.g., Walsh v. Nat'l Computer Sys., Inc., 332 F.3d 1150, 1157 (8th Cir. 2003); Hill v. John Chezik Imports, 869 F.2d 1122, 1124 (8th Cir. 1989).

Applying the statutory language here, the question is whether this action was "brought" "within ninety days after the giving of . . . notice" by the EEOC. The Amended Complaint alleges that Brinkman received the EEOC's right-to-sue letters on July 18, 2016 (Am. Compl. ¶¶ 15-16), and ninety days later was Sunday October 16,

meaning the deadline for "bringing" this action was extended to the following business day, Monday, October 17, 2016. Fed. R. Civ. P. 6(a)(1)(C). To "bring" (or "commence") this action,[7] Brinkman was required to "fil[e] a complaint with the court," Fed. R. Civ. P. 3, which in turn required her to "deliver[] it to the clerk," Fed. R. Civ. P. 5(d)(2)(A). The problem here is that the Complaint was not "delivered" to (or received by) the Clerk of the Court on or before October 17; indeed, by Brinkman's own reckoning, the Complaint was not electronically uploaded (and hence "delivered") to the Clerk until October 21, 2016. (See Second Stratton Decl. ¶¶ 22-23.) This can hardly come as a surprising conclusion, as Stratton received no NEF on October 16, 2016, the date she attempted to upload the Complaint. Accordingly, the Court concludes the Complaint was not filed – meaning this action was not brought – until October 21, 2016, four days too late. See Perry v. Accurate Staffing Consultants, Inc., Civ. No. 3:10-cv-201, 2010 WL 2650881, at *1-2 (W.D.N.C. June 30, 2010) (where plaintiff paid filing fee and received case number on April 28 but did not receive NEF or successfully upload complaint via ECF until May 4, case was not commenced until May 4).

**B.    The Complaint will not be "deemed" timely**

Brinkman responds that the Court should "direct[] the Clerk . . . to administratively docket the Complaint as [having been] filed on October 16, 2016." (Mem. in Opp'n at 12.) In support, she cites the Court's ECF Case Filing Procedures Guide (the "Guide"), which provides that a party prevented from filing a new case

---

[7] "To 'bring an action' is a generic phrase, meaning '[t]o sue' and 'to institute legal proceedings,' [and] is commonly used as a synonym for the act of 'commencing' an action." Larson v. Nationwide Agribusiness Ins. Co., 739 F.3d 1143, 1147-48 (8th Cir. 2014) (citations omitted).

"because of a technical difficulty" must (i) "[f]ile the case in ECF as soon as possible once the difficulty is resolved," attaching a form "explain[ing] what the technical difficulties were and why the filing is untimely," and (ii) file a motion requesting the Court accept the untimely filing. Guide § II(L)(2)(a)(ii), available at http://www.mnd.uscourts.gov/cmecf/guides/Civil-ECF-Procedures-Guide.pdf. In the Court's view, however, Brinkman cannot avail herself of this provision, because there is no indication in the record that some "technical difficulty" prevented her from timely commencing this case. The Guide provides several examples of "technical difficulties" including "ECF is unavailable, internet service is unavailable, [and] law firm server malfunction," but nothing suggests any of those things occurred here. Indeed, all the record reveals is that Stratton, *using a colleague's account on an unfamiliar ECF system*, failed to properly upload the Complaint to the Clerk. This simply does not suggest that "technical difficulty," rather than user error, prevented the Complaint from being correctly submitted. The Court cannot deem the Complaint timely under these circumstances.

    **C.**    **Equitable tolling does not apply**

Brinkman also argues that even if her Title VII claims are untimely, the 90-day deadline for filing suit should be equitably tolled. The Court does not agree.

The Supreme Court has recognized that Title VII's time limitations may be equitably tolled in appropriate circumstances. See, e.g., Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394 (1982). Equitable tolling is premised on the "excusable neglect" of the party invoking it, Shempert v. Harwick Chem. Corp., 151 F.3d 793, 797 (8th Cir.

1998) (citation omitted), and provides a "limited and infrequent form of relief" appropriate only where (1) the plaintiff pursued her claims diligently but (2) some *extraordinary* circumstance "stood in [her] way," Smithrud v. City of St. Paul, 746 F.3d 391, 396 (8th Cir. 2014) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984) (*per curiam*) (holding that a plaintiff "who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence"). Though frequently invoked by dilatory litigants, "[f]ederal courts have typically extended equitable [tolling] relief only sparingly." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 98 (1990).

Here, the Court accepts at face value the representations of Brinkman's lawyers regarding their communication with the Clerk's office,[8] which might suggest a circumstance "standing in Brinkman's way" from timely filing. Arguably, therefore, she satisfies one prong of the test for equitable tolling. See Shempert, 151 F.3d at 798 (equitable tolling may be appropriate where "the court has led the plaintiff to believe that . . . she has done everything required of . . . her") (citing Baldwin Cty., 466 U.S. at 151).

But the other prong of the test requires Brinkman to demonstrate that she acted diligently, and it is here that her entreaty for equitable tolling fails. It is undisputed Brinkman's counsel waited until the eleventh hour to file her Complaint. The ninetieth

---

[8] The male employee with whom Hall interacted is unidentified in the record, which could be deemed a fatal defect. See, e.g., Davis v. Browner, 113 F. Supp. 2d 1223, 1228 (N.D. Ill. 2000) ("Reliance on an unidentified person in the clerk's office is not enough to warrant equitable tolling."). Indeed, with the timeliness of Brinkman's claims hanging in the balance, one might expect that Hall would have asked for (and written down) the employee's name. But the Court will overlook this lack of specificity, as it finds equitable tolling inappropriate regardless.

day after July 18, 2016, was Sunday, October 16, 2016, and Stratton waited until that day – a Sunday, when no ECF help was available from the Clerk's office – to attempt to electronically file the Complaint. Despite submitting several lengthy Declarations, *none* of Brinkman's lawyers has offered *any* explanation why they waited until the very end of the limitations period to attempt to commence this action. Indeed, those Declarations make clear that work on the Complaint began in the spring of 2016, and a "first draft of the complaint" was prepared "[d]uring the *summer of 2016*," long before October 16. (Hall Decl. ¶¶ 5, 7 (emphasis added).) This case is not particularly novel or complex, as it asserts garden-variety discrimination and retaliation claims. Yet, for unexplained reasons, counsel waited until the last minute to attempt to file it.

Courts have routinely refused to equitably toll the deadline for filing suit under similar circumstances. For example, in Kellum v. Commissioner of Social Security, 295 F. App'x 47 (6th Cir. 2008), the plaintiff attempted to commence an action by submitting a complaint to the clerk of court, using the ECF system, on the last day of the filing period. The clerk received the complaint and sent the plaintiff an automated notice that it had been filed. The following day, however, the clerk's office notified the plaintiff that the required filing fee had not been paid, and it was another four days before the plaintiff finally did so. Accordingly, the plaintiff's complaint was not date-stamped as filed until five days after the deadline had passed. The defendant moved to dismiss, arguing the complaint was untimely, and the district court agreed, concluding in the process that the plaintiff was not entitled to equitable tolling.

The Sixth Circuit affirmed, reasoning that equitable tolling was unavailable because the plaintiff "wait[ed] until the last possible day to file his complaint." Id. at 50. Noting that the circumstances served as a "classic reminder of the risks [plaintiffs] take for no apparent reason by waiting until the very end of a filing period to initiate their lawsuits," the court found equitable tolling inappropriate because there was no indication the plaintiff had "acted diligently in pursuing his rights." Id. at 50-51. Other decisions are in accord. See, e.g., Hallgren v. U.S. Dep't of Energy, 331 F.3d 588, 590 (8th Cir. 2003) (rejecting equitable tolling where plaintiff's counsel waited until end of 90-day period to mail complaint to clerk; "By mailing the complaint one day before the deadline, [the plaintiff's] attorney assumed the risk that any slight disruption of ordinary mail service might delay the filing."); Farzana K v. Ind. Dep't of Educ., 473 F.3d 703, 705 (7th Cir. 2007) ("Waiting until the last hours is not diligent; the errors that often accompany hurried action do not enable the bungling lawyer to grant himself extra time."); Towner v. Astrue, No. C10-91, 2011 WL 3875425, at *7 (N.D. Iowa Aug. 31, 2011) (refusing to apply equitable tolling where plaintiff "wait[ed] until the last minute, when [his counsel] encountered difficulties with the electronic filing system, . . . ultimately causing his complaint to be untimely filed"); Thomas v. United Parcel Serv., No. 99 C 6258, 2000 WL 290279, at *2 (N.D. Ill. Mar. 17, 2000) (declining to apply equitable tolling where plaintiff waited until final day of statutory period).

The Court perceives no reason to reach a different result in this case. Equitable tolling is predicated on *excusable* neglect, Shempert, 151 F.3d at 797, but such an assertion rings hollow when a plaintiff such as Brinkman – despite being represented by

several experienced attorneys – sits on her claims without explanation and then races to court just before the filing deadline. Parties who "wait until the last day of a statute-of-limitations period to file a complaint have only themselves to blame when Murphy's law comes knocking." Mader v. United States, 654 F.3d 794, 814 (8th Cir. 2011) (*en banc*) (Bye, Murphy, Melloy, Smith & Shepherd, JJ., dissenting).

Nor does the Court believe this outcome is altered by the incorrect information Brinkman's counsel received from the Clerk's office. Indeed, that information is relevant only *because* her counsel waited until the end of the 90-day period to file suit; had counsel been diligent and filed the action even a few days earlier, the "misinformation" would not have mattered and Brinkman would not find herself in her current predicament. See Kellum, 295 F. App'x at 50-51 ("misleading" email from clerk's office to plaintiff indicating complaint had been electronically filed when it had not been did not justify equitable tolling where plaintiff did not submit complaint until "the last day on which he could timely file it"). Moreover, this lack of diligence was exacerbated by counsel's response *after* speaking to the Clerk's office. Stratton and Hall were aware that they were supposed to receive an NEF once the Complaint was filed, which is exactly why Stratton asked Hall to contact the Clerk's office on Monday, October 17, 2016. (Second Stratton Decl. ¶ 16 ("I asked [Hall] to verify that the case initiation procedure had been successful and the complaint was electronically filed . . . because we hadn't received an ECF confirmation of the filing of the complaint."); Hall Decl. ¶¶ 11-12.) But even after being told that the Complaint had been filed, no NEF came – and yet counsel did nothing on Tuesday, October 18; Wednesday, October 19; or Thursday, October 20.

All the while Stratton and Hall were exchanging emails "puzzling over the delay" (Hall Decl. ¶ 18; accord Second Stratton Decl. ¶ 20), but doing nothing about it. In the Court's view, this four-day delay further highlights the lack of diligence with which this case was commenced and undermines the application of equitable tolling.

While the Court is not unsympathetic to Brinkman's situation, the Supreme Court has admonished that equitable tolling cannot be employed to save an untimely claim simply because of a "vague sympathy for particular litigants." Baldwin Cty., 466 U.S. at 152. Accordingly, and for the reasons set forth above, the Court concludes that the 90-day limitation period should not be equitably tolled here, and Brinkman's Title VII claims will be dismissed as untimely.

## II. The MHRA claims

Having dismissed the Title VII claims, all that remain for resolution are Brinkman's MHRA claims. Yet, subject-matter jurisdiction in this action is premised on the existence of a federal cause of action. Jurisdiction over the state-law claims exists solely by virtue of the supplemental jurisdiction statute, 28 U.S.C. § 1367, which provides jurisdiction over state claims forming part of the same "case or controversy" as federal ones. The exercise of supplemental jurisdiction is discretionary, and where all federal claims have been dismissed prior to trial, "even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); accord, e.g., Wilson v. Miller, 821 F.3d 963, 971 (8th Cir. 2016). Accordingly, the Court declines to exercise supplemental jurisdiction over the MHRA claims, and they will be dismissed without prejudice.

The Court pauses, however, to address one additional issue. The Union and Nasseff argue that Brinkman's MHRA claims are "completely preempted" by the duty of fair representation arising out of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(a). (See Union Mem. at 18-21; Nasseff Mem. at 6-7.) When a state-law claim is completely preempted, it is essentially converted into a federal claim. E.g., Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987). According to Defendants, that is the case here, meaning the MHRA claims are in actuality claims under the NLRA. And if that were true, the Court might be precluded from declining to exercise "supplemental" jurisdiction over them.

Nevertheless, preemption does not impact the analysis. The doctrine of complete preemption provides an exception to the "well-pleaded complaint" rule, which requires a federal cause of action to appear on the face of a complaint before a defendant may remove a case to federal court under federal-question jurisdiction. E.g., Gaming Corp. of Am. v. Dorsey & Whitney, 88 F.3d 536, 542-43 (8th Cir. 1996). That, of course, is not the issue here. Rather, Defendants assert preemption as a *defense* to Brinkman's MHRA claims, and in those circumstances, the character of the claims is not altered. See, e.g., Trs. of Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc., 450 F.3d 324, 329 n.3 (8th Cir. 2006) (distinguishing complete preemption as a "jurisdictional doctrine . . . used to remove state claims to federal court" from preemption "as a defense, raising the question of whether [certain] claims can be litigated in this action"); Gaming Corp., 88 F.3d at 542-43 (noting that a "federal defense, including the defense that one or more claims are preempted by federal law, does not give the defendant the right to

remove," and pointing out the difference between this and "[c]omplete preemption . . . as an exception to the well-pleaded complaint rule"); see also Caterpillar, 482 U.S. at 398 ("The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does not establish that they are removable to federal court."). Accordingly, even if preempted, the state-law nature of Brinkman's MHRA claims remains unaltered, and hence the Court may – and will – decline to exercise supplemental jurisdiction over them.[9]

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED**:

1. Defendants' initial Motions to Dismiss (Doc. Nos. 5, 14) are **DENIED AS MOOT**;

2. Defendants' current Motions to Dismiss (Doc. Nos. 35, 37) are **GRANTED IN PART**. The Motions are **GRANTED** as to Brinkman's Title VII claims (Counts I and III of the Amended Complaint), and those claims are **DISMISSED WITH PREJUDICE**; and

---

[9] In any event, whether the MHRA claims are preempted is not as clear-cut as Defendants make it out to be. See, e.g., Wrobbel v. Asplundh Constr. Corp., 549 F. Supp. 2d 868, 874-75 & n.6 (E.D. Mich. 2008) (no NLRA preemption of state discrimination claims); Parker v. Metro. Transp. Auth., 97 F. Supp. 2d 437, 448-49 (S.D.N.Y. 2000) (concluding that Supreme Court precedent makes clear discrimination claims are not necessarily preempted by duty-of-fair-representation claims). The issue is better left to a state-court judge to resolve, should Brinkman choose to refile her MHRA claims. See Caterpillar, 482 U.S. at 398 n.13 (declining to express an opinion on preemption; "These are questions that must be addressed in the first instance by the state court.").

3. The Court declines to exercise supplemental jurisdiction over Brinkman's state-law claims (Counts II and IV of the Amended Complaint), and those claims are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: May 2, 2017

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge